**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL M. SMITH,<br>Plaintiff,<br>v.<br>JOHN A. KROESEN and MARK COOLEY, et al.,<br>Defendants. | Civ. A. No. 10-5723 (NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

DOMINIC ROMAN DEPAMPHILIS
D'AMATO LAW FIRM PC
2900 FIRE ROAD, SUITE 200
EGG HARBOR TOWNSHIP, NJ 08234
On behalf of plaintiff

CLARK B. LEUTZE
MARGOLIS EDELSTEIN
100 CENTURY PARKWAY
SUITE 200
MOUNT LAUREL, NJ 08054
On behalf of defendant Mark Cooley

**HILLMAN, District Judge**

Presently before the Court is the motion of defendant, Mark Cooley, for summary judgment in his favor on the claims of plaintiff, Paul Smith, that defendant is liable for injuries plaintiff sustained while playing in a rugby match. For the reasons expressed below, defendant's motion will be granted.

**BACKGROUND**

On April 10, 2010, plaintiff Paul Smith, a member of the Jersey Shore Sharks rugby team, was playing in a rugby match against Old Gaelic Rugby Football Club, which was coached by

defendant Mark Cooley. A rugby match is comprised of two, 40-minute halves, and it is typical to have 70 pile-ups of players and over 100 collisions with other players. During the first half of the match that day, plaintiff and a player from Old Gaelic got into a "ruck," which is described to the Court as an on-the-field argument.[1] The two players rolled on the ground, and plaintiff gave the Old Gaelic player a short jab to the ribs. Although the play had moved to the other end of the field, another Old Gaelic player, defendant John Kroesen, saw the ruck and, according to plaintiff, came from behind and intentionally kicked him in the face. Plaintiff sustained a left orbital fracture and a nasal fracture, for which plaintiff underwent surgery.

Plaintiff filed suit against Kroesen claiming that Kroesen's conduct was intentional assault and battery, or at a minimum, grossly negligent. Plaintiff then filed an amended complaint,[2] adding Cooley as a defendant, claiming that Cooley was grossly negligent in his coaching of the Old Gaelic team, and is responsible for plaintiff's injuries caused by Kroesen.[3] Kroesen

---

[1] In rugby, a "ruck" also refers to efforts by opposing teams huddled over a dropped ball to kick it to a teammate to gain possession.

[2] The Court granted plaintiff's unopposed motion to file an amended complaint. (See Docket No. 8, Nov. 11, 2011.)

[3] Plaintiff also added as defendants the Old Gaelic Rugby Football Club, the Eastern Pennsylvania Rugby Union ("EPRU"), and the Mid-Atlantic Rugby Football Union ("MARFU"), which oversees

did not answer plaintiff's complaint, and the clerk has entered default against him. Plaintiff and Cooley went to arbitration to resolve plaintiff's claims against Cooley, but following the arbitrator's decision, plaintiff sought a trial de novo. Cooley has now filed for summary judgment on plaintiff's claims against him. Plaintiff has opposed Cooley's motion.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court may exercise subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.[4] The citizenship of the parties is as follows: plaintiff is a citizen of New Jersey; defendant Kroesen is a citizen of Pennsylvania; defendant Mark Cooley is a citizen of Pennsylvania; defendant Old Gaelic Rugby Football Club, Inc. is a corporation incorporated in the Commonwealth of Pennsylvania with its principal place of business at 712 Bower

---

EPRU. On October 31, 2012, plaintiff dismissed by consent his claims against MARFU. Old Gaelic and EPRU were never served with the amended complaint, and plaintiff has abandoned his claims against them. (Pl. Attorney Cert. ¶ 9, Docket No. 38-1.)

[4] On November 26, 2013, the Court issued an Order to Show Cause directing plaintiff to provide a certification properly stating the citizenship of the parties before the case could proceed, as the citizenship of the parties was not properly pleaded in the original or amended complaints. (See Docket No. 36.) Plaintiff complied with the Court's Order, and the citizenship of the parties has now been properly averred. (See Pl. Attorney Cert., Docket No. 38-1.)

Road, Shermans Dale, Pennsylvania; defendant Eastern Pennsylvania Rugby Union, Inc. ("EPRU") is a corporation incorporated in the Commonwealth of Pennsylvania with its principal place of business at 2107 Fidelity Building, Philadelphia, Pennsylvania 19103; and Mid-Atlantic Rugby Football Union, Inc. is a Delaware corporation with its principal place of business at 800 King Street, Wilmington, Delaware.

**B. Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

Cooley has moved for summary judgment in his favor on several bases. One basis is that he is immune from liability for plaintiff's injuries under N.J.S.A. 2A:62A-6 and 42 U.S.C. § 14501 et seq., both of which afford immunity to volunteer athletic coaches for damages incurred by a player during an organized sports competition. Cooley also argues that plaintiff's claims against him are barred by plaintiff's assumption of the risk of injury in the very physical game of

rugby, as well as by the annual rugby participation agreement, which includes a provision that by agreeing to play in the league, plaintiff releases all other members and coaches from liability for any damages suffered by plaintiff through his participation in the league. In addition to these outright bars to plaintiff's claims against Cooley, Cooley also argues that no facts demonstrate that Cooley was negligent in his coaching duties rendering him liable for plaintiff's injuries.

Plaintiff has opposed Cooley's motion as to the application of N.J.S.A. 2A:62A-6 and 42 U.S.C. § 14501 et seq., his assumption of risk, and the release from liability in the participation agreement. With regard to the volunteer immunity statutes, plaintiff argues that N.J.S.A. 2A:62A-6 does not apply to Cooley because he never completed a safety orientation and training skills program as required by N.J.S.A. 2A:62A-6(c)(2),[5] and because Cooley was "grossly negligent," which conduct is excluded from immunity by N.J.S.A. 2A:62A-6(c)(1). Plaintiff also argues that Cooley cannot avail himself of 42 U.S.C. § 14501 at this point because he failed to plead it as an affirmative defense in his answer to plaintiff's complaint, and because

[5] Cooley represents that in order to serve as a coach for Old Gaelic he completed nationwide USA Rugby training, which included "injury prevention and first aid procedures and general coaching concepts," as required by N.J.S.A. 2A:62A-6(c)(2). Plaintiff contends, however, that in order to satisfy N.J.S.A. 2A:62A-6(c)(2), plaintiff was required to take a safety orientation program specifically provided in New Jersey. As set forth below, we need not resolve this issue.

plaintiff was grossly negligent, which is also exempted from immunity under the federal volunteer immunity act.

Plaintiff further rejects Cooley's arguments that because he assumed the risk of being injured by knowingly playing in a contact sport, and because he signed a release from liability for damages resulting from participating in the contact sport, Cooley cannot be held liable for plaintiff's damages. Plaintiff contends that because Cooley was grossly negligent in his coaching of Old Gaelic, plaintiff did not assume the risk of injury that was beyond the bounds of typical rugby play--namely, Kroesen's kick to plaintiff's face that resulted from Cooley's poor coaching of Kroesen. Plaintiff also contends that the participation agreement releases do not apply to Cooley's gross negligence.

Even accepting all of plaintiff's arguments - that the volunteer immunity statutes do not apply, that he did not assume the risk of the injuries he suffered, and that the participation agreements do not bar his claims - plaintiff has failed to establish sufficient facts from which a jury could conclude that Cooley was grossly negligent in his coaching duties.

Under New Jersey law, in order to prove that a person acted negligently, the plaintiff must establish: (1) a duty of care owed to the plaintiff by the defendant; (2) that defendant breached that duty of care; and (3) that plaintiff's injury was proximately caused by defendant's breach. Boos v. Nichtberger,

2013 WL 5566694, *4 (N.J. Super. App. Div. Oct. 10, 2013) (citing Endre v. Arnold, 300 N.J. Super. 136, 142 (App. Div. 1997)). The burden of proving a negligence claim rests with the plaintiff, and as part of that burden, it is vital that plaintiff establish that his injury was proximately caused by the unreasonable acts or omissions of the defendant. Id. (citing Camp v. Jiffy Lube No. 114, 309 N.J. Super. 305, 309-11 (App. Div.), cert. denied, 156 N.J. 386 (1998)) (other citation omitted).

With regard to a claim of gross negligence, "the difference between 'gross' and 'ordinary' negligence is one of degree rather than of quality." Fernicola v. Pheasant Run at Barnegat, 2010 WL 2794074, *2 (N.J. Super. Ct. App. Div. 2010) (quoting Oliver v. Kantor, 122 N.J.L. 528, 532 (Sup. Ct. 1939), aff'd o.b., 124 N.J.L. 131 (E. & A. 1940)). "Gross negligence refers to behavior which constitutes indifference to consequences." Griffin v. Bayshore Medical Center, 2011 WL 2349423, *5 (N.J. Super. Ct. App. Div. 2011) (citing Banks v. Korman Assocs., 218 N.J. Super. 370, 373 (App. Div. 1987)).

Cooley argues that plaintiff cannot provide any facts to establish that he caused Kroesen to kick plaintiff in the face during a rugby match. Cooley argues that there is no evidence to support that Cooley knew that Kroesen was prone to violence beyond what is typical during a rugby match, which is supported by the fact that Kroesen had never previously received a yellow card (for a small infraction resulting in a period of time out

from a game) or a red card (for a serious infraction resulting in discharge from the game).[6] Moreover, Cooley argues that plaintiff has not provided any evidence to suggest that Cooley failed in his duty as a coach by affirmatively encouraging Kroesen or any of his players to act violently during a rugby match, or by failing to appreciate a player's violent tendencies.[7]

In the context of arguing that Cooley is not entitled to immunity under N.J.S.A. 2A:62A-6(c)(1) because he was grossly negligent in his coaching duties, plaintiff argues that his negligence claim against Cooley is supported by his liability expert, Dr. Leonard K. Lucenko, who is qualified in federal and state courts as an expert in the field of physical education, recreation, coaching, and sports risk management and safety. According to Dr. Lucenko, Cooley deviated from reasonable coaching standards as follows:

> 1. The failure to exercise due care and foresight even though it was foreseeable that noncompliance with the Laws of the Game of Rugby created the environment for serious and permanent injury.
> 2. The failure to understand and appreciate well known

---

[6] Plaintiff does not dispute that he had received three yellow cards in the past.

[7] Cooley also counters plaintiff's allegations that Kroesen intentionally kicked plaintiff in the face, because it is not clear whether Kroesen, who, according to Cooley and other players, was attempting to save his teammate from being punched by plaintiff, slipped while entering the fray. The dispute over the nature of Kroesen's and plaintiff's actions during the altercation is not material to the resolution of plaintiff's claims against Cooley, however, because to decide Cooley's motion for summary judgment, it must be accepted as true that Kroesen intentionally kicked plaintiff in the face.

> coaching risk management principles, such as the nine legal duties of a coach.
> 3. The failure to properly teach and enforce the Laws of the Game of Rugby.
> 4. The failure to recognize the dangerous conditions created by the failure to comply with the Laws of the Game of Rugby.
> 5. The failure to instruct and train the players on what actions to take regarding fighting.
> 6. The failure to closely monitor and supervise Mr. Kroesen given his intensity as a player.
> 7. The failure to effectively and adequately address the intense play of Mr. Kroesen, which was resulting in injuries to other players.
> 8. The failure on the part of Mr. Cooley to understand he was bound by the USA Rugby Coaches' Code of Conduct.
> 9. The failure to adopt and follow the principles outlined in the Code of Conduct.

(Pl. Opp. at 13, citing Ex. A.) Plaintiff argues that Dr. Lucenko's conclusions present material disputed evidence as to whether Cooley was grossly negligent in his coaching duties, and therefore his claim against Cooley should be sent to a jury to decide.

Gross negligence requires substantial proof beyond simple negligence; it requires wanton or reckless disregard for the safety of others. Griffin v. Bayshore Medical Center, 2011 WL 2349423, *5 (N.J. Super. Ct. App. Div. 2011) (citing In re Kerlin, 151 N.J. Super. 179, 185 (App. Div.1977)). Setting aside any expert qualification issues under Daubert,[8] and accepting as

[8] Federal Rule of Evidence 702, as amended in 2000 to incorporate the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), imposes an obligation upon a district court to ensure that expert testimony is not only relevant, but reliable. As the Third Circuit has made clear, "the reliability analysis [required by Daubert] applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts

true all of Dr. Lucenko's findings that Cooley failed to properly instruct his players with regard to the propriety of fighting during a rugby match, the Court cannot find that plaintiff has provided sufficient disputed facts to send to a jury on the issue of proximate causation. None of Dr. Lucenko's conclusions, nor any of the other evidence in the record, demonstrate that Cooley acted indifferently, willfully, or wantonly in his coaching of Kroesen such that he should be held legally responsible for the injuries plaintiff sustained when Kroesen kicked plaintiff in the face.

As noted by the New Jersey courts, the question of the scope of duty among coaches and players is intertwined with considerations of public policy. Egerter v. Amato, 2006 WL 551571, *3 (N.J. Super. Law Div. 2006) (citing Hopkins v. Fox and Lazo Realtors, 625 A.2d 1110 (N.J. 1993)). The "strong social policy to facilitate free and aggressive participation in athletic activity requires . . . leeway at least where no specific rule or statute has been violated. Otherwise courts and juries will become de facto athletic directors, second guessing actor's conduct in reviewing generalized claims of negligence." Id. (citations omitted). "The fact is that any athletic endeavor

---

and the conclusion." ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 291 (3d Cir. 2012) (citations omitted). To be admissible, expert testimony must concern subject matter beyond the average juror's understanding, be sufficiently reliable, and be offered by a sufficiently qualified expert. DeHanes v. Rothman, 727 A.2d 8 (N.J. 1999).

involves some degree of risk. Coaches are expected to absorb such risks, just like participants in informal games or athletes on a scholastic gridiron. . . . [J]udges are not athletic directors. They should not formulate standards of care which require them and juries to function as if they were." Id. (citation omitted).[9]

In an earlier case proceeding under the same school of thought, and one that is similar to plaintiff's case here against Cooley, a student in one high school filed suit against a soccer coach from another high school for injuries he sustained when an opposing player "undercut" him. Nydegger v. Don Bosco Preparatory High School, 495 A.2d 485, 485 (N.J. Super. Ct. Law Div. 1985). The student's allegations against the opposing team's coach were that he taught his players to compete in an "aggressive and intense manner" and that winning the game is all important. In resolving the coach's motion to dismiss, the court concluded, "[I]n the absence of an instruction by a coach to one of his players to commit a wrongful act or his instructing one in

[9] It is interesting to note that Dr. Lucenko served as plaintiff's expert in Egerter, where a track coach sued her 8th grade student for injuries she sustained when the student hit her with a shot put. Dr. Lucenko concluded in that case that plaintiff organized, supervised and conducted the practice session in an appropriate and professional manner, but that it was the instantaneous and negligent decision by the student to throw the shot before given the instruction to do so that led to the plaintiff's severe and life altering injuries. Egerter v. Amato, 2006 WL 551571, *1 (N.J. Super. Law Div. 2006). On defendant's motion for summary judgment, the court found that the recklessness standard of negligence applied, and there was no evidence that the student acted recklessly.

moves or procedures that would increase the risk of harm to opposing players, a coach is not responsible to a player on an opposing team who is injured." Nydegger, 495 A.2d at 485. The court elaborated:

> Interscholastic sports are not compulsory school programs. Students who participate do so voluntarily. Those who participate in a sport such as soccer expect that there will be physical contact as a result of 22 young men running around a field 50 by 100 yards. Physical contact is not prohibited by the rules of soccer. Injuries do result. Those who participate are trained to play hard and aggressive. . . .
>
> [N]o student or parent is blind to the realities of interscholastic athletics. The possibility of a serious injury exists regardless of the care exercised by schools and their personnel. Imposing liability upon schools and their coaches based on negligent or wrongful acts of players, committed during the course of play would have the practical effect of eventually eliminating interscholastic athletics. Interscholastic athletic activities have become an integral part of the intellectual, physical and social development of young people. No matter what the intentions or good purpose, a coach cannot insure or guarantee that each and every member of his team will not commit a foul or will not in the heat of the contest do an act beyond that which is acceptable.
>
> A coach cannot be held responsible for the wrongful acts of his players unless he teaches them to do the wrongful act or instructs them to commit the act. There is absolutely no evidence in the record that would support such a finding. Teaching players to be intense and aggressive is an attribute. All sports and many adult activities require aggressiveness and intensity.

Id. at 486-87.

The rationale in Nydegger holds true in this case. Plaintiff voluntarily participated in an aggressive contact sport where it is common to engage in on-field "rucks." Plaintiff was

involved in a ruck that day, administering a "short jab in the ribs" to the other player, when Kroesen intervened and kicked plaintiff in the face. Absent evidence that Cooley directed Kroesen specifically, or his team in general, to inflict violence onto opposing team players as part of the game, Cooley cannot be held liable for plaintiff's injuries. Additionally, any of Cooley's alleged failings as a coach as articulated by Dr. Lucenko cannot serve as the basis for finding proximate causation because there cannot be any definitive conclusion that even if Cooley were the perfect coach, Kroesen would not have acted as he did. See, e.g.,id. at 486 ("[A] coach cannot insure or guarantee that each and every member of his team will not commit a foul or will not in the heat of the contest do an act beyond that which is acceptable."); Divia v. South Hunterdon Regional High School, 2005 WL 977028, *7 (N.J. Super. Ct. App. Div. 2005) (explaining that proximate cause is the efficient cause, the one which necessarily sets the other causes in operation; it is the act or omission, which directly brought about the happening complained of, and in the absence of which the happening complained of would not have occurred) (citing Verdicchio v. Ricca, 843 A.2d 1042, 1057 (N.J. 2004) (explaining that merely establishing that a defendant's negligent conduct had some effect in producing the harm does not automatically satisfy the burden of proving it was a substantial factor)).

In sum, the evidence in the record, viewed most favorably to

plaintiff, cannot support his claim that Cooley was grossly negligent in his coaching of Kroesen such that Cooley can be held liable for plaintiff's injuries inflicted by Kroesen during the rugby match. Consequently, Cooley's motion for summary judgment must be granted.[10] An appropriate Order will be entered.

Date: March 25, 2014
At Camden, New Jersey

S/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

[10] Plaintiff's only remaining claim in this case is against Kroesen, upon whom the Clerk entered default at plaintiff's request. (See 1/28/2011 Docket Entry.) As directed in the accompanying Order, plaintiff shall commence prosecution of his claim against Kroesen within 30 days, or this matter will be closed for lack of prosecution.