UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
PAUL M. SMITH,                   :
                                 :  Civ. A. No. 10-5723 (NLH)(AMD)
            Plaintiff,           :
                                 :
        v.                       :
                                 :     OPINION
JOHN A. KROESEN,                 :
                                 :
            Defendant.           :
```

**APPEARANCES:**
DOMINIC ROMAN DEPAMPHILIS
D'AMATO LAW FIRM PC
2900 FIRE ROAD, SUITE 200
EGG HARBOR TOWNSHIP, NJ 08234
     On behalf of plaintiff

ALAN C. MILSTEIN
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, PC
EASTGATE CORPORATE CENTER
308 HARPER DRIVE
SUITE 200
MOORESTOWN, NJ 08057
     On behalf of defendant

<u>HILLMAN</u>, **District Judge**

Pending before the Court is the motion of defendant, John A. Kroesen, to vacate the entry of default judgment against him in favor of plaintiff, Paul Smith, for injuries plaintiff sustained while playing in a rugby match on April 10, 2010.[1] Plaintiff, a member of the Jersey Shore Sharks rugby team, was playing in a rugby match against Old Gaelic Rugby Football Club, which was

---

[1] Also pending is plaintiff's motion for costs.

coached by former defendant Mark Cooley. A rugby match is comprised of two, 40-minute halves, and it is typical to have 70 pile-ups of players and over 100 collisions with other players. During the first half of the match that day, plaintiff and a player from Old Gaelic got into a "ruck," which resulted in an altercation between Plaintiff and a player from Old Gaelic. The two players rolled on the ground, and plaintiff gave the Old Gaelic player a short jab to the ribs. Although the play had moved to the other end of the field, another Old Gaelic player, defendant John Kroesen, saw the fight and, according to plaintiff, came from behind and intentionally kicked him in the face. Plaintiff sustained a left orbital fracture and a nasal fracture, for which plaintiff underwent surgery.

    Plaintiff filed suit against Kroesen claiming that Kroesen's conduct was intentional assault and battery, or at a minimum, grossly negligent.[2] Plaintiff then filed an amended complaint, adding Cooley as a defendant, claiming that Cooley was grossly negligent in his coaching of the Old Gaelic team, and was responsible for plaintiff's injuries caused by Kroesen. Kroesen did not answer plaintiff's complaint, and the clerk entered

---

[2] This Court may exercise subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

default against him.  Plaintiff and Cooley went to arbitration to resolve plaintiff's claims against Cooley, but following the arbitrator's decision, plaintiff sought a trial de novo.

Since then, the Court has issued four comprehensive Opinions in this case, which was filed on November 3, 2010.  The first concerned the establishment of subject matter jurisdiction (Docket No. 36, 37); the second granted summary judgment in favor of the Mark Cooley, coach of the Old Gaelic Rugby team (Docket No. 40, 41); the third denied plaintiff's motion for default judgment against Kroesen and directed plaintiff to file a second amended complaint and re-serve it on Kroesen (Docket No. 43, 44); and the fourth, after plaintiff complied with the third Opinion and obtained a Clerk's entry of default against Kroesen, granted plaintiff's motion for default judgment (Docket No. 53, 54).

In the fourth Opinion, the Court noted that in his motion for default judgment, plaintiff made a demand for compensatory damages in the amount of $375,000 and punitive damages in the amount of $125,000.  The Court found that plaintiff's documents - medical records, medical bills, and photographs - demonstrated that he was entitled to compensatory damages for his injuries, and observed that plaintiff endured significant pain and suffering as a result of being kicked in the face, including the need for surgical repair of significant facial fractures resulting in bone grafts

3

and the use of plates and screws.  The Court also recognized that plaintiff suffered from a minor concussion, he continued to experience numbness, and he had permanent scarring.  The Court found, however, that plaintiff did not provide any support, through case law, affidavits, or otherwise, for his specific demand of $375,000 and for the imposition of punitive damages.  The Court afforded plaintiff the opportunity to submit sufficient evidence to support his claim for damages.

On October 16, 2015, plaintiff submitted a comprehensive package of supporting documents to establish the entitlement to his requested damages.  This package included the results of a New Jersey state and nationwide LEXISNEXIS search for comparable jury verdicts and settlements, and a certification of plaintiff as to his pain and suffering, along with additional supporting medical records. (Docket No. 56.)  The Court thoroughly reviewed plaintiff's submissions, and on January 6, 2016, determined that an award of $375,000.00 in compensatory damages and $125,000.00 in punitive damages was reasonable and justified.  (Docket No. 57.)

On February 15, 2016, Kroesen filed the instant motion to set aside the judgment entered against him.  Plaintiff has opposed Kroesen's motion, and also has a pending motion for costs.  For the reasons expressed below, Kroesen's motion will be denied, and plaintiff's motion for costs will be granted.

4

**DISCUSSION**

The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b). Fed. R. Civ. P. 55. Rule 60(b) provides,

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

It appears that Kroesen has moved to set aside the judgment entered against him pursuant to Rule 60(b)(1) and Rule 60(b)(6). For a motion based on Rule 60(b)(1), a three-part test is applied: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. Budget

Blinds, Inc. v. White, 536 F.3d 244, 256 (3d Cir. 2008)(quoting United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).  For a motion based on Rule 60(b)(6), the three-part test does not apply, and instead a court must consider whether the defendant has demonstrated the existence of "extraordinary circumstances" that justify reopening the judgment. Budget Blinds, 536 F.3d at 255, 257 n.16 (citations omitted).  The "'decision to vacate a default judgment is left to the sound discretion of the trial court.'"  United States v. $90,745.88 Contained in Account No. 9506826724 Held in the Name of &/or for the Ben. of Amiri Mbubu Auto Sales, LLC, at Bank of Am., 1125, 465 F. App'x 143, 145 (3d Cir. 2012) (quoting Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988)).  Defendant is not entitled to relief under either provision.

The Court begins with the issue of whether Kroesen has a meritorious defense to plaintiff's claims, which is a "'threshold issue in opening a default judgment.'"  Id. (quoting Harad, 839 F.2d at 982).  Kroesen admits in his affidavit that he intentionally kicked plaintiff.  Kroesen states:

> 2. At some point during the game, Paul Smith began fighting with a member of my team and was on top of one of my teammates hitting him with his fist.
>
> 3. I approached the two of them and kicked Mr. Smith once to try to get him off of my teammate.

6

(Docket No. 61 at 1.)

Kroesen's defense is "Mr. Smith started the altercation with my teammate and all I did was to try to stop Mr. Smith from hitting my teammate," he "did not intend to injur[e] Mr. Smith in any way," and "Mr. Smith signed a Waiver and Release of Liability, which I also signed." (Id. at 2.) None of these purported defenses absolve Kroesen of liability for assault, battery, and gross negligence. See Docket No. 53 at 8-10 (setting forth the elements of assault, battery, and gross negligence). Kroesen admittedly kicked plaintiff in the face, which contact was intentionally perpetrated, non-consensual, and beyond the bounds of typical rugby play.

While it is true that the defense of justification to assault and battery exists in New Jersey for a third party protecting another including a social friend, there are limits to the defense. State v. Chiarello, 69 N.J. Super. 479 (App. Div. 1961). First, the force used must be commensurate to the harm sought to be prevented. Id. at 486. While Kroesen says in his affidavit that Smith was on top of his friend and hitting him with his fist, nothing in the description of the altercation explains why a kick to the head was a necessary or justifiable means under the circumstances. The medical records show that this was no ordinary kick – Plaintiff suffered significant injuries.

7

Moreover, the defense is derivative.  Plaintiff must show that his friend himself would be justified in asserting the defense.  Id. at 484 (before one person has right to use force in defense or aid of another, the circumstances must show that the person on whom the assault is being made has right of self-defense and, therefore, right to use the same force and intervention must be necessary for the protection of the third person).  While Defendant says Plaintiff started the altercation with his unidentified friend, there is no affidavit from Defendant's friend, or even a third party witness, who offers to testify, or any other facts alleged or pled tending to show, that Defendant's friend was the victim of an assault entitled to self-defense.

And while allegations in an answer may be enough to justify the opening of a default judgment, the defense must be more than hypothetical or possible.  It must be supported by specific facts which if believed would establish a complete defense.  Self-serving conclusory statement are not enough. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).  Here, the defense amounts to a claim that Plaintiff was hitting my friend with his fist so I kicked him in the head (causing significant facial injuries requiring surgery and permanent

8

implants). It is simply too little, too late.[3]

As for the release, Defendant has failed to produce a copy so the Court is unable to determine if it would in fact support a defense. Common sense and existing law suggest otherwise. Such releases typically absolve the sponsor of such events from liability rather than individuals who participate in the event. Moreover, as Plaintiff points out, to the extent such releases seek to confer immunity for intentional torts they are void as against public policy. Stelluti v. Casapenn Enterprises, LLC, 1 A.3d 678, 689 (N.J. 2010) (citation omitted) ("An agreement containing a pre-injury release from liability for intentional or reckless conduct also is plainly inconsistent with public policy."); see also Vitale v. Schering-Plough Corp., --- A.3d ---, 2016 WL 4427430, at *4 (N.J. Super. Ct. App. Div. Aug. 22, 2016) (citation omitted) ("Exculpatory agreements for negligent conduct also violate public policy in a variety of settings . . . . ."). Consequently, the Court does not find that Kroesen has a meritorious defense to plaintiff's claims against him.

---

[3] We note that Defendant's motion is procedurally improper and could be denied on that basis alone. Defendant did not submit his affidavit in support with his original motion with his motion and then not until after Plaintiff had filed his opposition. This precluded Plaintiff from having a fair opportunity to respond. A moving party may not use the opportunity for reply to provide materials that should have been included in its original motion.

Turning next to the third part of the test under Rule 60(b)(1), Kroesen's default was the result of his own culpable conduct. In his affidavit, Kroesen relates the following with regard to his notice of plaintiff's lawsuit against him:

> 5. Apparently, sometime in 2010, Mr. Smith filed suit in this Court against a number of defendants.
>
> 6. Occasionally, I would receive correspondence indicating that certain activities would take place in the lawsuit requiring Mr. Smith to add or delete parties from the lawsuit.
>
> 7. In or about December 2014, a Sheriff served a Complaint on me personally.
>
> 8. This was at least four (4) years after the lawsuit was filed.
>
> 9. I did not know what to do with the Complaint and did not consult with an attorney and waited to go to Court to defend myself.
>
> 10. I had never been sued before, nor sued anyone, and had never seen a Complaint or legal paper like the one I received.
>
> 11. I never heard nor received any further correspondence advising me to be in Court at a particular date, place or time.
>
> 12. I understand that a Default Judgment was entered against me on January 6, 2016.
>
> 13. I received no notice of an Entry of Default against me.
>
> 14. In fact, I received nothing until February 1, 2016 advising that a Judgment was entered against me in the amount of Five Hundred Thousand Dollars ($500,000.00.).

(Docket No. 61 at 1-2.)

Kroesen admits that he was aware of the lawsuit after it was filed in 2010,[4] and that he was personally served with plaintiff's second amended complaint in December 2014. Kroesen took no action relative to the lawsuit despite being aware of it since 2010, or after being personally served again in 2014 with a second amended complaint, until he received notice in February 2016 that default judgment had been entered against him. Even accepting as true that he had never been sued, was unfamiliar with the documents sent to him,[5] and was never advised to appear in court on a

---

[4] The brief filed by Kroesen's counsel in support of his motion to vacate default relates that Kroesen was not served with the amended complaint that was filed in November 2011. (Docket No. 59 at 1.) Kroesen does not state that he was not personally served with the original complaint that was filed in November 2010. Thus, under Fed. R. Civ. P. 5(a)(2), plaintiff was not required to personally serve the amended complaint on Kroesen.

[5] In anticipation that a defendant may be unaware of what to do when he is served with a complaint, the accompanying summons, which is required to be served on the defendant in order to constitute proper service, see Fed. R. Civ. P. 4(c)(1), informs the defendant:

> A lawsuit has been filed against you.
>
> Within 21 days after service of this summons on you (not counting the day you received it) -- or 60 days if you are the United States or a United States Agency, or an office or employee of the United States described in Fed. R. civ. P. 12 (a)(2) or (3) -- you must serve on the plaintiff an answer to the attached complaint or a motion under rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

11

particular date, ignoring legal documents and service of a complaint simply because they were new and unfamiliar cannot absolve a properly served defendant from the ramifications of burying his head in the sand.  See, e.g., Tr. of Liberace Revocable Trust v. Silver Screen Video, Inc., 1992 WL 349629, at *2 (D.N.J. Nov. 2, 1992) (citing United Bank of Kuwait P.L.C. v. Enventure Energy, 755 F. Supp. 1195, 1205 (S.D.N.Y. 1989)) (" A default is deemed willful where a defendant simply ignores the complaint without action."); Braverman Kaskey, P.C. v. Toidze, 599 F. App'x 448, 453 (3d Cir. 2015) (finding that the district court did not abuse its discretion in denying Toidze's Rule 55(c) motion to vacate the default judgment when it determined that Toidze's conduct in ignoring the action was culpable and not merely negligent, because BK emailed Toidze at atmayatoidze@gmail.com in an attempt to notify her of the pending litigation, and despite her claim that this email address was abandoned, her present counsel used that address to communicate with her in September 2012, long after BK had emailed Toidze at the same address in November of 2010).  Thus, Kroesen's inaction as described in his

---

> **If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.** You also must file your answer or motion with the court.

(See Docket No. 2, emphasis added.)

affidavit is sufficient to establish culpable conduct.

The record demonstrates, however, that Kroesen had more notice of the proceedings over the course of four years than he admits in his affidavit.  An adult residing at Kroesen's home address was personally served with the original complaint in 2010. (Affidavit of Service, Docket No. 3.)  Kroesen was served with a copy of plaintiff's Request to Enter Default filed on January 27, 2011 by United States Postal Service, first class mail, at 6356 Galleon Drive, Mechanicsburg, Pennsylvania.  (Docket No. 60-5 at 23.)  Kroesen was mailed a copy of a letter dated March 26, 2012 concerning the litigation from Clark B. Leutze, Esquire, defense counsel for Mark Cooley.  (Docket No. 60-5 at 42.)  On April 10, 2014, plaintiff mailed to Kroesen a copy of his first motion for default judgment.  (Docket No. 42-1.)

After the Court denied plaintiff's first motion for default judgment motion and ordered plaintiff to serve an amended complaint on Kroesen, plaintiff did so on January 13, 2015 by personally serving Kroesen at his Mechanicsburg, Pennsylvania address. (Affidavit of Service, Docket No. 50.)  Kroesen failed to respond, and Kroesen was mailed a copy of plaintiff's Request to Enter Default on March 10, 2015. (Docket No. 51 at 2.)  On June 23, 2015, plaintiff mailed to Kroesen a copy of his motion for default judgment.  (Docket No. 52-1.)  After the Court entered

judgment in plaintiff's favor on August 18, 2015, plaintiff mailed to Kroesen his motion for costs on February 1, 2016.

The motion for costs, which indicated that a judgment had been entered against him, finally spurred Kroesen into action. Two complaints and six other mailings, including two clerk's entries of default and two motions for default judgment, were all delivered to the same Mechanicsburg, Pennsylvania address that the motion for costs was mailed to.  This further evidences Kroesen's willful decision to ignore this action, and weighs against vacating default judgment.[6]

Finally, with regard to prejudice to plaintiff if the default judgment is set aside, it is clear that default judgment is the only remedy available to plaintiff on his claims against a defendant who fails to respond to two complaints and numerous correspondence over the course of almost five years.  This Court even afforded Kroesen a second chance to take his head out of the sand in October 2014 by denying plaintiff's first motion for default judgment and directing the service of a second amended

---

[6] Kroesen's failure to respond to numerous communications from plaintiff also negates a finding that extraordinary circumstances warrant the default judgment to be set aside.  See Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008) (noting that extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices).

14

complaint.  When Kroesen failed to respond to that complaint, and ignored the notice of a pending motion for default judgment against him, there is nothing more plaintiff or this Court could do without prejudicing plaintiff.

Even though there is a general policy disfavoring default judgments and encouraging decisions on the merits, Harad, 839 F.2d at 981, the default judgment procedure exists precisely for cases like this one.  Kroesen was well-aware of plaintiff's claims against him for five years, but he refused to respond until a $500,000.00 judgment was entered against him.  If Kroesen's non-appearance served as an acquiescence to his liability for plaintiff's injuries, to the extent he now wishes to challenge the determination that plaintiff is entitled to $375,000.00 in compensatory damages and $175,000.00 in punitive damages, Kroesen was also afforded more than a fair opportunity to present his objection to plaintiff's request for damages.  More specifically, Kroesen had from June 2015, when plaintiff moved for default judgment on the second amended complaint in which he requested $500,000 in damages (Docket No. 52-3), up until the Court's entry to default judgment on January 6, 2016, to appear and contest the amount of plaintiff's requested damage award.  The culpability for plaintiff's damage award, as well as liability, rests squarely on Kroesen.

**CONCLUSION**

Accordingly, the Court will deny Kroesen's motion to vacate the default judgment entered against him.  The Court will grant plaintiff's motion for costs.  An appropriate Order will be entered.


Date: <u>September 27, 2016</u>         <u>  s/ Noel L. Hillman  </u>
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.